IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
02 JUN 27 PM 1:23
U.S. DISTRICT
N.D. OF ALABAMA

| | |
|---|---|
| PATRICK STEVEN McGRATH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 99-BU-3147-S |
| ) | |
| LOWE'S HOME CENTERS, INC. and ) | |
| KENNETH NORTH, ) | |
| ) | |
| Defendants. ) | |

ENTERED
JUN 27 2002

## MEMORANDUM OPINION

The court has already dismissed three of the complaint's four counts. The sole remaining claim is whether Lowe's fired the plaintiff in violation of the Americans With Disabilities Act (ADA). Before the court is defendant Lowe's motion for summary judgment. Lowe's has submitted a memorandum in support of its motion. The plaintiff filed a response memorandum, to which Lowe's filed a reply. Both parties have submitted summary judgment evidence.

### The Law

The ADA plaintiff must show that he was disabled within the meaning of the Act; that he was otherwise qualified to perform his job, with or without reasonable accommodation; and that he was fired because of his disability. *Hilburn v. Murata Electronics North America*, 181 F.3d 1220 (11th Cir. 1999). To be disabled under the Act, the plaintiff must show that he had

a physical impairment that substantially limited one or more of his life activities. *See Standard v. A.B.E.L. Svcs.*, 161 F.3d 1318, 1327 (11th Cir. 1998). The ADA plaintiff may have a cause of action even if he was not actually disabled, if his employer thought that he was disabled and discharged him on account of the perceived disability. Finally, if the employer comes forth with a legitimate, non-discriminatory reason for firing the plaintiff, it is incumbent on the plaintiff to point to evidence sufficient to make a factual question as to whether the asserted reason for his discharge is a mere cover-up for the real reason --- the plaintiff's disability. *Jones* v. *Bessemer Carraway Medical Center*, 137 F.3d 1306 (11th Cir. 1998).

## The Summary Judgment Evidence

For the plaintiff's ADA claim to proceed, the summary judgment evidence must be sufficient to support those findings necessary for the plaintiff to prevail. Of course, the court must view the evidence in the light most favorable to the plaintiff and draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The court's ruling will be based only upon the evidence referenced by the parties in their legal memoranda. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986).

*The plaintiff's accident*: On January 6, 1999, during the operation of a forklift, the plaintiff's right hand got caught between building materials and a supporting beam. Lowe's arranged for

-2-

the plaintiff to be driven to the Horizons Health Center, where he was treated. The plaintiff received a wrist splint and wore a sling for one week. He did not lose any fingernails, receive sutures, or break any of the bones in his hand or fingers. The plaintiff was restricted to left-hand duty for one week. Lowe's complied with this medical restriction. The plaintiff drove himself to work the following day, and never missed a day of work until January 17, 1999, the day he was fired.

Later, the plaintiff consulted with several other doctors. None of them placed any significant physical restrictions on the plaintiff. In fact, after several visits, Dr. Tindell concluded that the plaintiff was faking the extent of his injuries. The plaintiff told his personal physician, Dr. Masear, that he "wasn't experiencing a lot of pain." *Plaintiff's Deposition*, pg. 279. Dr. Masear concluded that the plaintiff did not have any permanent problems and could work without restrictions. By the time of his April 1999 visit to Dr. Masear, the plaintiff had begun work as a painter.

*The plaintiff's behavior toward DeCourley and the firing.* Chris DeCourley was zone manager in the building materials department, while the plaintiff was assistant zone manager. James Tidwell was assistant store manager, with authority over both the plaintiff and DeCourley.

On January 17, 1999, the plaintiff asked Sammy Baker to empty the dumpsters. Baker, however, was busy completing tasks given him by DeCourley, and DeCourley instructed Baker to stay with those tasks. Later in the day, DeCourley told building materials employees to assist

-3-

in emptying the dumpsters. The plaintiff became angry, and screamed rough and foul language at DeCourley. More than this, the plaintiff became physically threatening. DeCourley states in his affidavit:

> 4. After I asked the employees to empty the dumpsters, McGrath yelled to me in a threatening manner that "this is a bunch of bullshit" and also stated that I had "stepped on his dick." He also stated "fuck this," that he "wasn't going to bow down to me and kiss my ass," and that he "didn't give a damn."
> 5. McGrath also told me we could "take it outside."
> 6. I believe that McGrath wanted to start a fight with me on January 17, 1999.
> 7. McGrath was acting in a threatening manner towards me.
> 8. Assistant store manager Brad Tidwell also was present during part of my conversation with Patrick McGrath. Afterwards, Tidwell advised me that McGrath wold be terminated for his conduct. I asked Tidwell to let me leave the store before he (Tidwell) terminated McGrath because I was concerned that McGrath would come after me in the parking lot.

*DeCourley Affidavit*, ¶¶ 4-8.

Tidwell testified that the Plaintiff was "just going crazy" and verbally abusing DeCourley. *Tidwell Deposition*, pg. 90. The plaintiff told DeCourley that he "did not give a damn who his boss was." *Id.* at 100-01. Tidwell saw the plaintiff grab his crotch. Tidwell also heard McGrath tell DeCourley that "nobody was going to walk away from him." *Id.* at 118. Tidwell testified to the "look of fear" on DeCourley's face. *Id.* at 100-01. What Tidwell witnessed from the plaintiff was "well over anything that [Tidwell] ever witnessed." *Id.* at 90. The plaintiff himself admitted in his deposition that DeCourley thought the plaintiff was threatening him. The plaintiff also admitted that DeCourley had the authority to overrule the plaintiff's directions to other employees, while Tidwell testified that DeCourley was the plaintiff's boss.

According to company policy, insubordination and abusive behavior towards another employee subjected the fractious employee to immediate termination. Tidwell determined that the plaintiff's behavior was insubordinate and abusive. Accordingly, the plaintiff was fired that very day.

In his memorandum, the plaintiff points out the statements of the district manager, Marty Zahm, concerning the financial considerations the defendant takes into account when deciding whether to hire a disabled person. "If, an example is if Lowe's had to possibly spend a hundred thousand dollars. I don't know that we would do [the hire]." *Plaintiff's Memorandum*, pg. 5. The plaintiff points to evidence where Zahm used the words "damn," "hell,"and "ass." The plaintiff also points out that Zahm "got on an employee pretty well in the garden center." *Tidwell Deposition*, pg. 81. The plaintiff brings to the court's attention that another employee, John South, used the word "shit," although it was not uttered in anger.

### Discussion

In the court's opinion, it is clear that the defendant's motion for summary judgment is due to be granted. The court makes the following comments.

The plaintiff states that he alleges "that Lowe's Home Center's termination of his employment constitutes discrimination based on a perceived disability and fear regarding the costs of reasonable accommodation." *Plaintiff's Memorandum*, pg. 6. The plaintiff also states,

however, that he has "established facts sufficient to support a jury in reaching a factual determination that he had a disability at the time of his termination." *Id.* at 8. The allegation that an employer mistakenly thought an employee was disabled, and the allegation that the employee was in fact disabled, are inconsistent. However, it does not matter in this case because the summary judgment evidence cannot support either finding.

The plaintiff states that "while Plaintiff never alleged that Lowe's regarded him as mentally disabled, certainly Tidwell concedes that he perceived Plaintiff as 'going crazy.'" *Id* at. 3. If the plaintiff is contending that Tidwell regarded the plaintiff as mentally disabled because of Tidwell's use of the colloquialism "going crazy," such finding is impermissible.

The plaintiff states, "With regard to Plaintiff's prima facie showing of disability discrimination, it is undisputed that he was a right-handed male whose right hand was injured in such a manner as to preclude any physical activity, including sexual activities apparent without question, that might require sureness or firmness of grip....." *Plaintiff's Memorandum*, pg. 11. No reasonable person could conclude from the evidence in this case that the plaintiff's minor injury constituted a disability. Lowe did not regard the plaintiff as disabled, and he was not disabled.

Moreover, the plaintiff cannot show that Lowe's stated reason for firing him is pretextual. The plaintiff argues that his actions toward DeCourley were nothing unusual at Lowe's, as such language was part of Lowe's "cultural climate." *Plaintiff's Memorandum*, pg. 12. The language used by other employees does not compare with the language used by the plaintiff. Additionally,

more than language was involved in this case. It was reasonably perceived by DeCourley and Tidwell that the plaintiff was physically threatening DeCourley. Thus, the plaintiff was insubordinate and abusive to another employee.

Apparently the plaintiff also contends that the defendant did not want to incur the expense of accommodating his alleged disability, and that was the reason the plaintiff was discharged. Zahm's statement that Lowe's, in deciding whether to hire a handicapped person, would consider the amount of money that would be required to accommodate the handicap, is legally insufficient, by itself or with other evidence, to establish that this plaintiff was discharged because of money considerations.

### Defendant Kenneth North

Defendant Kenneth North is due to be dismissed as a party to this action because he has not been served with a copy of the summons and complaint.

### Order to Follow

The court will enter an order in accordance with this memorandum opinion.

DONE this 26th day of June, 2000.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE